UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ROYAL LEE BLAKES, | ) | 1:04-CV-6159 SMS HC |
| | ) | |
| Petitioner, | ) | ORDER DENYING PETITION FOR WRIT |
| | ) | OF HABEAS CORPUS |
| v. | ) | [Doc. #1] |
| | ) | |
| J. R. SOLIS, Warden, | ) | ORDER DIRECTING CLERK OF COURT |
| | ) | TO ENTER JUDGMENT FOR |
| Respondent. | ) | RESPONDENT |
| | ) | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The parties having voluntarily consented to exercise of Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c)(1), by order dated February 9, 2005, this case was assigned to the undersigned for all purposes, including entry of final judgment.

**PROCEDURAL BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Stanislaus, following his conviction by jury trial on June 14, 2002, of sale of a controlled substance (Count I: Cal. Health & Safety Code § 11352(a)) and possession of a controlled substance (Count II: Cal. Health & Safety Code § 11350). See Exhibit 1, Respondent's Answer to the Petition (hereinafter "Answer"). On July 23, 2002, Petitioner was sentenced to serve a six-year determinate term on count I, and a two-year concurrent term on count II. Id.

1    Thereafter, Petitioner filed a notice of appeal with the California Court of Appeal, Fifth
2    Appellate District (hereinafter "5th DCA"). Counsel for Petitioner filed a brief pursuant to <u>People v.</u>
3    <u>Wende</u>, 25 Cal.3d 436 (1979), finding no appealable issues, and Petitioner filed a supplemental brief
4    raising several claims. <u>See</u> Exhibits 2-3, Answer. On June 19, 2003, the 5th DCA affirmed the
5    judgment. <u>See</u> Exhibit 4, Answer.

6    Petitioner filed a petition for review in the California Supreme Court on July 1, 2003. <u>See</u>
7    Exhibit 5, Answer. On August 27, 2003, the petition was summarily denied. <u>See</u> Exhibit 6, Answer.

8    On July 24, 2003, Petitioner filed a petition for writ of habeas corpus in the California
9    Supreme Court. <u>See</u> Exhibit 7, Answer. On March 30, 2004, the petition was denied. <u>See</u> Exhibit 8,
10   Answer.

11   On August 2, 2004, Petitioner filed the instant federal habeas petition in the United States
12   District Court for the Eastern District of California, Sacramento Division. By order of the Court
13   dated August 25, 2004, the matter was transferred to the Fresno Division and received in this Court.
14   Petitioner raises four grounds for relief: 1) "Petitioner claims that the counsel at trial was ineffective
15   for failing to move a judgment of acquittal at the conclusion of the People's case. This failure denied
16   the petitioner his right to efficient counsel under the Sixth Amendment"; 2) "Trial counsel failed to
17   [investigate] the case and such denied the petitioner his due process and right to [effective] counsel
18   under the United States [Constitution]"; 3) "The record shows appellant presented entrapment
19   defense at trial. Appellant claims that appellate counsel's failure to brief entrapment issue prejudiced
20   appellant requests [sic] the Honorable court to take judicial notice of a recent 9th Circuit Court of
21   Appeals case Bradly v. Duncan, 01-55290"; and 4) "The use of the Louisana [sic] matter as a strike
22   violated the petitioner's Federal Due Process rights and his Equal Protection right under the United
23   States [Constitution]."

24   On December 14, 2004, Respondent filed an answer to the petition. Respondent concedes the
25   petition is fully exhausted and timely filed. Petitioner did not file a traverse.

26   **FACTUAL BACKGROUND**
27   **Count I**
28   On October 11, 2001, Officer Randy Bollinger of the Modesto Police Department recruited

1  David Anderson to act as a confidential informant to initiate a drug purchase. (RT[1] 37.) Officer
2  Bollinger searched Anderson's person to make sure he was not carrying any drugs, and he took
3  possession of Anderson's money. (RT 37.) Bollinger also attached a wire to Anderson to enable
4  officers to monitor and record Anderson's conversations. (RT 37-38.)
5      At around 4:20 p.m., Bollinger drove Anderson to the Quik Serve market in Modesto. (RT
6  38-39.) The area was a known drug location. (RT 39.) When Bollinger arrived, he noticed Petitioner
7  standing in front of the store. (RT 39.) Bollinger gave Anderson $39 in cash to purchase drugs. (RT
8  40.) Anderson then exited the vehicle and approached Petitioner. (RT 40.) Anderson contacted
9  Petitioner and asked him if he knew where any fast (methamphetamine) was to be found. (RT 113.)
10 Petitioner told Anderson he would "check it out" for him. (RT 113.) Anderson told Petitioner that he
11 would give him $5 for "tripping" if he could obtain a $20 bag. (RT 113-114.) Petitioner told
12 Anderson he would see what he could do. (RT 114.) Petitioner then walked across the street to the El
13 Capitan Motel and appeared to be looking around for someone. (RT 114.)
14     Petitioner returned and told Anderson he could not find any fast for him. (RT 114.) Anderson
15 told him he was having a bad day and couldn't find any fast or rock. (RT 114.) Petitioner responded
16 that he might be able to help him find rock. (RT 114.) Anderson told him he would give him $5 for
17 tripping if he could get him a $20 rock. (RT 114.) Petitioner went back into the laundromat and after
18 a couple of minutes re-emerged. (RT 115.) He told Anderson to sit down next to him on the curb.
19 (RT 115.) Petitioner's hand was closed, and he had Anderson's $20. (RT 115.) Petitioner then put
20 his hand on the curb, opened his fist, and took it away leaving a $20 rock of cocaine on the curb. (RT
21 115.) Anderson then gave Petitioner five additional dollars and told him he would like $40 more
22 rock and would return. (RT 115.) Petitioner said, "No problem." (RT 115.)
23     Anderson then returned to Officer Bollinger's vehicle and turned over the rock. (RT 115.)
24 The rock tested positive for .44 grams of crack cocaine. (RT 152-154.)
25     **Defense**
26     Petitioner testified that Anderson approached him at the liquor store on October 11, 2001.
27
28     [1]"RT" refers to the Reporter's Transcript.

1  (RT 164.) Anderson told him he would give Petitioner five dollars if he would "trip" for him. (RT
2  164.) Petitioner said, "OK." (RT 164.) Anderson told Petitioner he was sick. (RT 165.)
3       Petitioner then went across the street to look for drug dealers who often sit on the steps in
4  front of the El Capitan Motel. (RT 166.) At that time, Petitioner could not locate any drug dealers, so
5  he returned and informed Anderson. (RT 167.) Anderson again mentioned drugs, and Petitioner
6  offered to try to find crack for him. (RT 168.) Anderson told him he would give him five dollars if he
7  could obtain $20 worth of crack. (RT 168.) Petitioner stated he helped Anderson because Petitioner
8  needed the five dollars and because Anderson looked sick. (RT 169, 173.) He stated Anderson
9  appeared to be suffering from withdrawal. (RT 172-173.) Petitioner then spotted a known drug
10 dealer in the laundromat, approached him, and obtained a $20 rock of crack cocaine in exchange for
11 twenty dollars. (RT 170-171.) He then went back to Anderson, sat down on the curb, and dropped
12 the rock cocaine. (RT 172.) Anderson picked it up and gave Petitioner five additional dollars. (RT
13 172.) Petitioner then left. (RT 172.)

14 **Count II**

15      Modesto Police Officer Michael Hicks was working undercover drug purchases on October
16 11, 2001. (RT 94.) At approximately 5:00 p.m., Hicks spotted Petitioner standing in an alleyway
17 next to the liquor store at Needham and P Streets. (RT 95.) Hicks saw Petitioner holding a can of
18 beer so he made contact with Petitioner regarding the beer. (RT 95.) As Hicks approached, Petitioner
19 proceeded to empty his beer and toss it in the trash can. (RT 95.) Hicks also saw Petitioner drop
20 something out of his right hand which appeared to be a small plastic bindle. (RT 96.) The bindle was
21 retrieved by Officer Heller and booked into evidence. (RT 96.) The bindle contained a couple of
22 rocky white substances. (RT 67.) The substances tested positive for .18 grams of cocaine base. (RT
23 155.)

24     **Defense**

25      Petitioner testified that he was standing on the side of the store when he was approached by
26 two police cars. (RT 173.) Petitioner stated he was standing near the lotto sign on the corner of the
27 store; the dumpster was on the other side of the alley. (RT 173-174.) Petitioner was conversing with
28 two other men. (RT 174.) One of the other men dropped the small plastic bindle on the ground and

then went into the store. (RT 175.) The man told Petitioner to watch the bindle while he went into the store. (RT 175.) When the police officers approached, Petitioner was told to pour out his beer, which he did. (RT 177.) Petitioner informed the police that the bindle was not his. (RT 179.)

**DISCUSSION**

**I.  Jurisdiction**

    Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 fn.7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution.  In addition, the conviction challenged arises out of the Stanislaus County Superior Court, which is located within the jurisdiction of this court.  28 U.S.C. § 2254(a); 2241(d).  Accordingly, the Court has jurisdiction over the action.

    On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment).  The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

**II.  Legal Standard of Review**

    This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

    The AEDPA altered the standard of review that a federal habeas court must apply with respect to a state prisoner's claim that was adjudicated on the merits in state court. Williams v. Taylor, 529 U.S. 362, 410-413, 120 S.Ct. 1495, 1518-23 (2000).  Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States;" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade, 538 U.S. 63, 72, 123 S.Ct. 1166, 1173 (2003) (disapproving of the Ninth Circuit's approach in Van Tran v. Lindsey, 212 F.3d 1143 (9th Cir. 2000)); Williams, 529 U.S. at 413 (2000). "A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Lockyer, 538 U.S. at 73 (citations omitted). "Rather, that application must be objectively unreasonable." Id. (citations omitted).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct, 28 U.S.C. 2254(e)(1); the Court is bound by a state's interpretation of its own laws, Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*, 537 U.S. 859, 123 S.Ct. 231 (2002); and the court must defer to the state court's determination of the federal issues unless that determination is "contrary to, or involved an unreasonable application of, clearly established federal law." Lockyer, 538 U.S. at 70.

A state court decision is "contrary to" federal law "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." Id. at 72, *quoting* Williams, 529 U.S. at 405-06 (O'Connor, J., concurring) (internal quotation marks omitted).

A state court decision involves an unreasonable application if it correctly identifies the governing rule but unreasonably applies it to a new set of facts, see Lockyer, 538 U.S. at 74, *citing* Williams, 529 U.S. at 413, or fails to extend a clearly established legal principle to a new context in a way that is unreasonable, see Bailey v. Newland, 263 F.3d 1022, 1028 (9th Cir.2001), *citing* Van Tran v. Lindsey, 212 F.3d 1143, 1150 (9th Cir.2000). An unreasonable application of federal law is something more than an incorrect or even clearly erroneous application; the application must be "objectively unreasonable." Lockyer, 538 U.S. at 74. Although only Supreme Court law is binding on the states, our Circuit precedent remains relevant persuasive authority in determining whether a

1  state court decision is objectively unreasonable. Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th
2  Cir.1999).

3       Application of these standards is significantly impeded where, as here, the state court
4  supplies no reasoned decision. Delgado v. Lewis, 223 F.3d 976, 981 (9th Cir.2000). Under such
5  circumstances, the Court independently reviews the record to determine whether the state court
6  clearly erred in its application of Supreme Court law. Id., at 982 ("Federal habeas review is not de
7  novo when the state court does not supply reasoning for its decision, but an independent review of
8  the record is required to determine whether the state court clearly erred in its application of
9  controlling federal law."); see, e.g., Greene v. Lambert, 288 F.3d 1081, 1089 (9th Cir.2002). That is,
10 although the Court independently reviews the record, it still defers to the state court's ultimate
11 decision.

12 **III.  Review of Petitioner's Claims**

13     **A.  Ground One**

14     In his first ground for relief, Petitioner claims defense counsel was ineffective in failing to
15 move for a directed verdict pursuant to Cal. Penal Code § 1118 at the conclusion of the People's
16 case. Petitioner claims the evidence showed he had been entrapped by law enforcement into selling
17 and possessing a controlled substance.

18     1.  Clearly Established Supreme Court Law

19     The law governing ineffective assistance of counsel claims is clearly established for the
20 purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d).  Canales v. Roe, 151
21 F.3d 1226, 1229 (9th Cir. 1998.)  In a petition for writ of habeas corpus alleging ineffective assistance
22 of counsel, the court must consider two factors.  Strickland v. Washington, 466 U.S. 668, 687, 104
23 S.Ct. 2052, 2064 (1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994).  First, the petitioner must
24 show that counsel's performance was deficient, requiring a showing that counsel made errors so
25 serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment.
26 Strickland, 466 U.S. at 687.  The petitioner must show that counsel's representation fell below an
27 objective standard of reasonableness, and must identify counsel's alleged acts or omissions that were
28 not the result of reasonable professional judgment considering the circumstances. Id. at 688; United

States v. Quintero-Barraza, 78 F.3d 1344, 1348 (9th Cir. 1995). Judicial scrutiny of counsel's performance is highly deferential. A court indulges a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Strickland, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984); Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir.1994).

Second, the petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result ... would have been different," 466 U.S., at 694. Petitioner must show that counsel's errors were so egregious as to deprive defendant of a fair trial, one whose result is reliable. Strickland, 466 U.S. at 688. The court must evaluate whether the entire trial was fundamentally unfair or unreliable because of counsel's ineffectiveness. Id.; Quintero-Barraza, 78 F.3d at 1345; United States v. Palomba, 31 F.3d 1356, 1461 (9th Cir. 1994).

A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the petitioner as a result of the alleged deficiencies. Strickland, 466 U.S. 668, 697, 104 S.Ct. 2052, 2074 (1984). Since the defendant must affirmatively prove prejudice, any deficiency that does not result in prejudice must necessarily fail. However, there are certain instances which are legally presumed to result in prejudice, e.g., where there has been an actual or constructive denial of the assistance of counsel or where the State has interfered with counsel's assistance. See Strickland, 466 U.S. at 692; United States v. Cronic, 466 U.S., at 659, and n. 25, 104 S.Ct., at 2046-2047, and n. 25 (1984). Ineffective assistance of counsel claims are analyzed under the "unreasonable application" prong of Williams v. Taylor, 529 U.S. 362 (2000). Weighall v. Middle, 215 F.3d 1058, 1062 (2000).

2. Analysis

There is no reasoned state court decision with respect to this claim. Therefore, as stated above, the Court must independently review the record to determine if the state courts clearly erred in applying federal law. Delgado, 223 F.3d 981-982.

Petitioner claims defense counsel should have made a motion for a directed verdict based on the absence of evidence supporting conviction. Cal. Penal Code § 1118.1 addresses motions for directed verdict:

In a case tried before a jury, the court on motion of the defendant or on its own motion, at the

> close of the evidence on either side and before the case is submitted to the jury for decision, shall order the entry of a judgment of acquittal of one or more of the offenses charged in the accusatory pleading if the evidence then before the court is insufficient to sustain a conviction of such offense or offenses on appeal. If such a motion for judgment of acquittal at the close of the evidence offered by the prosecution is not granted, the defendant may offer evidence without first having reserved that right.

As set forth above, judgment of acquittal shall be ordered if the evidence is insufficient to sustain the conviction. In reviewing whether the evidence is insufficient to sustain the conviction, the trial court must determined whether "there is any substantial evidence, including all reasonable inferences to be drawn from the evidence, of the existence of each element of the offense charged." People v. Mendoza, 24 Cal.4th 130, 175 (2000), *citing*, People v. Mincey, 2 Cal.4th 408, 432, fn. 2 (1992). Here, the evidence clearly supported conviction. Petitioner obtained drugs for the Confidential Informant ("C.I.") in exchange for five dollars. Later, Petitioner was found to be in possession of drugs.

Petitioner argues, however, that counsel should have moved for a directed verdict based on Petitioner's defense of entrapment, because the evidence clearly supported entrapment. Under California law, entrapment may be shown as a matter of law, and a motion pursuant to § 1118.1 would be an appropriate vehicle for requesting dismissal of the charges. People v. Montgomery, 61 Cal.App.3d 718, 726 (1976); People v. Meacham, 256 Cal.App.2d 735, 744 (1967). "Entrapment as a matter of law requires that the defendant produce evidence that the criminal intent to commit the offense originated with the government." Montgomery, 61 Cal.App.3d at 726, *citing,* In re Foss, 10 Cal.3d 910, 931-932 (1974); People v. Moran, 1 Cal.3d 755, 760 (1970). In Montgomery, the court found the evidence clearly showed that defendant was willing to engage in bribery activity and that he harbored a continuing intent throughout the relevant time period. 61 Cal.App.3d at 726. In addition, the court noted the jury was properly instructed on the defense of entrapment and the evidence did no more than support the finding that the defendant was merely presented with an opportunity which he immediately seized. Id.

In this case, the evidence showed Petitioner possessed the felonious intent to commit the offense. The government, via the C.I., did no more than present Petitioner with an opportunity which he promptly seized. The evidence clearly showed Petitioner intended to search for drugs and provide

them to the C.I. in exchange for five dollars. In addition, the jury was properly instructed on Petitioner's defense of entrapment; however, the jury rejected the defense.

Therefore, even if defense counsel would have moved for a directed verdict pursuant to Cal. Penal Code § 1118.1, the motion would have been denied. Petitioner has not demonstrated error on the part of defense counsel, nor has he shown prejudice resulting therefrom. Accordingly, the state courts did not clearly err in rejecting this claim.

### B. Ground Two

In his next claim for relief, Petitioner contends defense counsel was ineffective for a number of reasons. Petitioner claims defense counsel failed to investigate the scene of the crime. He alleges counsel failed to acquire the police Field Investigative Cards in order to seek witnesses. He contends counsel failed to make a motion for information on the arresting officers' backgrounds. He claims counsel failed to question witnesses. He claims counsel failed to ask officers whether they had arrested Petitioner in order to protect the identity of the C.I. He contends counsel failed to question the C.I. whether the C.I. had paid taxes on the money police provided him which would have impugned the C.I.'s credibility. He alleges counsel failed to acquire hospital records of the C.I. He contends counsel failed to move for a mistrial based on the prosecutor's questioning of the C.I. with respect to his injury. Finally, he claims counsel failed to make a motion to suppress the evidence of a videotape and transcript since the actual conversation was not fully recorded.

All of these claims were presented to the California Supreme Court, and they were summarily rejected without a reasoned decision. As previously discussed, the Court must determine whether the state courts clearly erred in applying federal law. Further, counsel's alleged ineffectiveness must be adjudged in light of Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984), as fully discussed above.

Petitioner first claims counsel failed to investigate the scene of the crime. He alleges counsel could have obtained photographs or a video of the scene in order to show that police officers could not have possibly seen him tossing any items to the ground, because Petitioner was between two trash cans while the officers were approaching. As discussed by Respondent, however, the evidence at trial directly conflicts this description of the scene, and Petitioner has not submitted any evidence

1  which would support his rendition of the events. Petitioner testified he was standing beneath the
2  "Lotto" sign near the corner of the store; he did not testify that he was standing near the dumpster or
3  trash barrels. (RT 173-176.) In addition, Officer Heller testified that his view was partially blocked
4  by the dumpster; nevertheless, he was still able to see Petitioner throw a small plastic bindle to the
5  ground. (RT 72.) Thus, any photographic or video evidence obtained by counsel would not have
6  been beneficial to Petitioner. Therefore, Petitioner has not demonstrated counsel's failure to obtain
7  this evidence to be erroneous or prejudicial.

8        Petitioner next claims counsel failed to obtain the Field Investigative cards in order to secure
9  names of potential witnesses at the scene. However, Petitioner fails to identify any potential
10 witnesses that may have been on these cards, whether they would have testified, what they what have
11 testified to, or how this evidence would have affected the outcome of the trial. Petitioner's claim is
12 purely speculative and fails to demonstrate any error on counsel's part or any prejudice.

13       Next, Petitioner claims counsel failed to obtain information on the police officer's
14 backgrounds. He claims, "[t]here may have been a common thread where the police stated that they
15 saw someone 'toss' some matter." Petition at 6. Again, Petitioner's claim is entirely speculative.

16       Petitioner then claims counsel failed to appropriately question the arresting officers or their
17 witnesses. He contends counsel should have asked whether officers had arrested Petitioner to protect
18 the C.I.'s identity, and he contends counsel should have inquired whether the C.I. had filed a tax
19 return with respect to the money provided by the police. Again, Petitioner's assertions are mere
20 speculation. He sheds no light on what these questions would have revealed. He fails to show what
21 evidence what have been uncovered or how the evidence would have affected the trial. Accordingly,
22 his claim of ineffective assistance fails.

23       Next, Petitioner claims counsel failed to obtain the C.I.'s hospital records and failed to move
24 for a mistrial when the prosecutor questioned the C.I. about his injuries. As with the above claims,
25 these claims are mere conjecture. Petitioner does not demonstrate what the hospital records would
26 have revealed or how they would have affected the trial. Further, the record does not demonstrate
27 that the prosecutor questioned the C.I. about his injuries.

28       Finally, Petitioner claims his counsel was ineffective in failing to object to the video tapes or

1  transcripts of the drug transaction because the actual conversation was not fully recorded.
2  Petitioner's claim is not supported by the record. As pointed out by Respondent, the officers who
3  made the recordings testified they were accurate representations of the events. (RT 79-86.) Petitioner
4  submits no evidence showing the recordings were inaccurate. Therefore, Petitioner's contention that
5  counsel erred in failing to object to the evidence must be rejected.

### C. Ground Three

Petitioner next claims his appellate counsel was ineffective in failing to brief the entrapment issue on appeal. In support of his claim, Petitioner cites to Bradley v. Duncan, 315 F.3d 1091 (9th Cir. 2002), stating there are many factual similarities.

An ineffective assistance claim based on appellate counsel's failure to raise an issue by filing a Wende brief is also reviewed under the Strickland standard. Smith v. Robbins, 528 U.S. 259, 285 (2000). Petitioner must first show that counsel was objectively unreasonable in failing to find arguable issues to appeal, i.e., that counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them. Then, Petitioner must demonstrate prejudice, i.e., a reasonable probability that, but for his counsel's unreasonable failure to file a merits brief, he would have prevailed on his appeal. Id. As with all ineffective assistance claims, the Court may first evaluate the prejudice prong, and dispose of the claim if there is no such showing. Id., 528 U.S. 286, n. 14.

In Bradley, the Ninth Circuit found the trial court erred in failing to give entrapment instructions where the defendant's only defense was entrapment. 315 F.3d at 1098. The Ninth Circuit found the issue of entrapment should have been left for the jury to decide. Id. On the contrary, in this case the trial court properly instructed the jury on the entrapment defense; however, the jury rejected the defense. Therefore, Bradley does not aid Petitioner in this case. Accordingly, appellate counsel did not err in failing to brief this issue.

### D. Ground Four

In his last ground for relief, Petitioner claims the use of a Louisiana conviction as a prior strike violated Petitioner's due process and equal protection rights.

Pursuant to California Penal Code § 667(d)(2), a prior conviction of a felony includes:

A conviction in another jurisdiction for an offense that, if committed in California, is

punishable by imprisonment in the state prison. A prior conviction of a particular felony shall include a conviction in another jurisdiction for an offense that includes all of the elements of the particular felony as defined in subdivision (c) of Section 667.5 or subdivision (c) of Section 1192.7.

Petitioner was convicted in Louisiana on June 17, 1977, of armed robbery. (SCT[2] 17.) According to the record of the conviction, Petitioner entered the residence of Leola Rhodes on March 4, 1977. (SCT 17.) He was wearing a paper bag over his head with eye holes cut out. (SCT 17.) He carried a sawed-off shotgun in his hands. (SCT 17.) He and his co-defendant then took money from the purse of victim Rhodes at gunpoint. (SCT 17.)

In Louisiana, armed robbery is "the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon." La. Rev. Stat. Ann. § 14:64. In California, robbery is "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by force or fear." Cal. Penal Code § 211. As noted by Respondent, pursuant to the Three Strikes law, a defendant whose prior conviction was suffered in another jurisdiction is subject to the same punishment as one previously convicted of the same offense involving the same conduct in California. People v. Mumm, 98 Cal.App.4th 812, 816 (2002). "In determining whether the foreign prior contains all of the elements of the California felony, the trier of fact may not look outside the record of conviction, but may consider any evidence in the record of the foreign conviction if not precluded by the rules of evidence or other statutory limitation." Id., *citing*, People v. Myers, 5 Cal.4th 1193, 1201 (1993).

In this case, the trial court reviewed the record of the prior conviction and found beyond a reasonable doubt that Petitioner was the same individual as the Royal Lee Blakes who committed the prior offense in Louisiana, and

> "the Louisiana statute for armed robbery is substantially the same as the California statute for robbery to a sufficient degree that I'm satisfied that it would be a serious felony within the meaning of California Law."

(RT 244.)

It is clear the trial court did not clearly err in finding the Louisiana prior qualified as a strike

---

[2]"SCT" refers to the Supplemental Clerk's Transcript.

for purposes of California's Three Strikes law. In committing the prior offense, Petitioner took money from the victim by holding her at gunpoint with a sawed-off shotgun in her own home while masked with a paper bag. Clearly, this meets the definition of robbery under California law. Accordingly, Petitioner's claim must be rejected.

**ORDER**

Accordingly, IT IS HEREBY ORDERED that the Petition for Writ of Habeas Corpus is DENIED WITH PREJUDICE and the Clerk of Court is DIRECTED to enter judgment for Respondent.

IT IS SO ORDERED.

**Dated:** **September 13, 2006**                    **/s/ Sandra M. Snyder**
icido3                                                                   UNITED STATES MAGISTRATE JUDGE